### "THE NAVEMAR".
Petition of COMPANIA ESPANOLE DE NAVEGACION MARITIME, S. A.
No. 16374.

District Court, E. D. New York.
Dec. 15, 1942.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City, for petitioner.

Saul Sperling and Edward Ash, both of New York City, for claimants Richard Hohenberg, and others.

Foley & Martin and Beryl Harold Levy, all of New York City, for Yvonne Albinus et al.

GALSTON, District Judge.

The petition for limitation was filed on October 10, 1941, following the institution of suit by a large number of passengers of the Navemar, which steamer arrived in the port of New York on September 12, 1941. The time for the filing of claims expired, according to the motion papers, on November 19, 1941. Hundreds of claims were duly filed and proof taken before the special master. It appears that a settlement of those claims for the sum of $250,000 has tentatively been agreed upon. This motion is now made on behalf of twenty other claimants who seek permission to file their claims nunc pro tunc. The affidavits in support thereof follow essentially the same pattern. They assert that their delay in filing claims was wholly unintentional and adopt the affidavit of their attorney, Leon London, who avers: "None of them had knowledge that these proceedings were pending or that their time to file claims against the Navemar would expire on November 19, 1941."

The application is vigorously opposed by the petitioner and claimants who duly filed. From these affidavits it appears that the agents of the owner gave notice to the proctors for the petitioner of all oral or written grievances by any passenger of the Navemar who at any time had communicated with them and that at no time did they receive any claim from any of the twenty passengers who now belatedly seek to file claims in this proceeding, and indeed it appears from the moving affidavits that there is no reference to the giving of such notice. The proctors for the petitioner point out that the moving affidavits fail to disclose that prior to this present application these claimants ever had any intention of presenting to the steamship company or its agents a grievance or claim for damages. They omit any reference to having read or having heard in any way of suits brought against the Navemar by their fellow passengers. The affidavit of Vernon S. Jones points out that it would be unjust both to the petitioner and to the claimants who had filed to grant the present application; that all the ship's witnesses for the petitioner have returned to their homes in Spain and that the petitioner would encounter great difficulty in getting evidence to meet the claims that are now pressed. This affidavit likewise discloses that the claimants have been conducting settlement negotiations with the petitioner and that it has become necessary to canvass each one of the 577 claimants to obtain his personal consent to acceptance of the offers of settlement. If the present application were granted it would become necessary for each one of these claimants to be informed of the new situation.

The affidavit of Albarino, also associated with the firm of proctors representing the petitioner, recites that since the arrival of the Navemar in New York on September 12, 1941, he was actively engaged, until approximately June of 1942, in the investigation of the claims made by the passengers and in the defense of suits brought by such passengers. Then, referring to the present application of Israel Rausen, one of the group of claimants now seeking permission to file, he states that he interviewed Rausen on April 1 or April 3, 1942, informing him that several hundred passengers of the Navemar had brought suit against the vessel. Rausen told him that he was not in sympathy with the passengers who had brought suit and that he had had about a dozen other friends who were also passengers on the same voyage and that they all felt the same way.

The Sperling affidavit shows that he is the proctor for 251 of the passenger claimants. Depositions were taken in connection with their claims, commencing September 24, 1941, some on board the vessel and others in various law offices, and also at Ellis Island, and in all, 1500 pages of testimony were reduced to writing and a large number of exhibits received and studied. He recites that in addition to the official or legal publications touching the attachment

of the Navemar by the claims of her passengers, there was considerable publicity in the New York papers, specifically P. M., the Daily News of September 18, 1941, the New York Times, the New York Post, and the New York Herald-Tribune of September 19, 1941. Further, on or about January 8, 1942, Sperling made overtures to the proctors for the petitioner regarding the adjustment of the cause without trial, and this proffer brought about extended settlement conferences over a period of five months, and of the 251 claimants whom he represents, 246 have affirmed and the remaining 5 have not expressed an opinion. Sperling opposes the motion on the ground that to permit the filing of belated claims could not be effected without prejudice to the proceedings heretofore had.

Myron J. Kleban, associated with proctors Foley and Martin, and representing 168 damage claimants, also opposes the present application. This affidavit discloses that Doba Starodoub and Moschko Starodoub, who seek now to have their claims filed, are respectively the mother and the father of Elizabeth Barabasch, one of the claimants herein, and mother-in-law and father-in-law respectively of Leon Barabasch, also a claimant herein. On September 25, 1941, Leon Barabasch made a statement of facts to proctor Kleban on behalf of himself, his wife, his daughter Anne, who is also one of the claimants herein, and also in behalf of Moschko Starodoub and Doba Starodoub, and on that day too he signed a retainer for himself and his daughter and took with him proposed retainers for execution by his wife and Moschko and Doba Starodoub. The written retainer of Elizabeth Barabasch was received by Kleban, but the retainers of Moschko and Doba Starodoub were not. Kleban then informed Barabasch that the Starodoubs had not signed the retainers nor made any formal statement, and called his attention to the fact that under the order of the court, claims had to be filed prior to November 19, 1941. Receiving no reply he wrote a second letter on November 7, 1941, and enclosed a new power of attorney and retainer forms. Barabasch wrote him on November 10, 1941, that after discussion with Starodoub, the latter was not willing to file any claim.

Then as to the claims of Jacob and Victor Bromberg, the Kleban affidavit recites that they came to his office on or about September 20, 1941, and made oral statements in English respecting the condition of the voyage and of themselves, and of Vera Bromberg, their mother. They too were notified that all claims had to be filed in the limitation proceedings by the 19th of November, 1941. Nothing further was heard from the Brombergs until January, 1942, when Jacob Bromberg telephoned asking whether it was possible to file claims on their behalf. Kleban said that though the time to file claims had expired he would undertake to have the claims filed nunc pro tunc. After further conferences the Brombergs dropped the matter.

The Kleban affidavit also discloses the application so far as it affects one Maurice Adus, in which it appears that he informed one William Goldstone, on February 19, 1942, who had telephoned him on behalf of Maurice Adus, that the time to file claims had expired and that he could not act for Adus, and that Goldstone was free to employ another attorney; and that the only basis on which he could act for Adus was conditional in the event of a settlement being unsuccessful. On September 14, 1942, he notified Goldstone that he was unable to act for Adus. Since that time two months have elapsed without any action having been taken by Adus.

The supporting averments are found in the affidavit of Abraham Herenroth, attached to the Kleban affidavit. He is one of the damage claimants. He recites that the conditions of the voyage had established a close relationship among the Navemar passengers, and that all of the applicants who make the present motion, with the exception of the Brombergs, the Starodoubs, Maurice Adus, Vassili Soukhomline and George P. Fedotov, formed a society, on September 30, 1941, called the "Society Navemar". This was a social organization promoted by the common bonds which had been established because of the hardships experienced on the voyage. Though Soukhomline and Fedotov were not members they attended some of the early gatherings. The society had functions at least every two weeks and as a result Herenroth avers that, with the exception of the Brombergs, he knows that each of the applicants on this motion had actual knowledge of the pendency of the proceedings involving the Navemar as early as September and October, 1941, and he adds that all of those, with the exception of the Brombergs, told him that they had decided not to join the suit, "either because of fear of

the risks of the litigation and the expenses thereof, or for other reasons personal to them". Corroboration is found in the affidavit of Nathalie Saitzoff, also a claimant. She recites that she knows all of the moving claimants except Maurice Adus; that she has met them on various occasions since they arrived in New York, particularly at a dinner in September, 1941, of the "Society Navemar", and again in March, 1942, and that discussions were had at both dinners concerning the filing of claims, and that the moving claimants stated that they had no desire to file claims for personal reasons.

Ida Rapaport, another claimant, also filed an affidavit. She knows those who now seek to have their claims filed, with the exception of Adus and the Starodoubs and that these proceedings were discussed at meetings of the "Society Navemar".

From the foregoing I must conclude that the present applications are not made in good faith. Attention must be called, in addition to the foregoing, to the unwarranted statement in the brief of their attorney that the proceeding for limitation did not provide for the publication of notice of the pendency of the limitation proceeding. The court's order, on October 10, 1941, on the contrary, provided for publication in the Brooklyn Eagle once a week for five weeks.

The motion will be denied. See In re Agwi Nav. Co. et al., 2 Cir., 89 F.2d 11; In re Eastern Dredging Co., D. C., 159 F. 549. Settle order on notice.